# IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA CIVIL DIVISION

ALLAN S. MARTIN and
MARIE B. MARTIN,

    Petitioners/Plaintiffs,

vs.

CITY OF TAMPA, FLORIDA,

    Respondent/Defendant.

_____/

Case No.: __DIVISION A__

Division: ___

COUNT III of this Complaint and
Petition is filed pursuant to Florida
Rule of Appellate Procedure
9.100(c)(2)

## COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF; AND PETITION FOR WRIT OF CERTIORARI

Petitioners/Plaintiffs, Allan S. Martin and Marie B. Martin, husband and wife, (hereinafter referred to as the "Martins"), by and through their undersigned counsel, hereby file this Complaint and Petition for Writ of Certiorari against Respondent/Defendant, City of Tampa, Florida (hereinafter referred to as "the City"), and allege as follows:

### Parties, Jurisdiction, and Venue

1.    This Complaint includes counts seeking damages that are capable of proof in excess of $15,000.00, exclusive of interest, costs and attorneys' fees.

2.    The Martins are residents of Hillsborough County, City of Tampa, and the fee-simple owners of that certain real property located at 801 South Delaware

Avenue in the City of Tampa, Hillsborough County, Florida, more particularly described as follows (the "Subject Property"):

> **Lots 1, 2 and 3, Block 11 of MORRISON GROVE SUBDIVISION, according to the Plat thereof as recorded in Plat Book 6, Page(s) 54, of the Public Records of Hillsborough County, Florida.**

3.      The Subject Property was the subject of an appeal, pursuant to <u>City of Tampa Zoning Code</u> Section 27-373(c), by the Martins to the City, by and through its City Council, for reversal of the denial by the Architectural Review Commission for the City of Tampa, Growth Management & Development Services Department, Architectural Review & Historic Preservation Division, ("ARC"), of the application for a Certificate of Appropriateness ("COA") by the Martins, for installation of a custom wrought iron fence along the perimeter of the Subject Property.

4.      The City is a governmental entity and political subdivision of the State of Florida, and an entity subject to suit according to Florida law, whose land use decisions are subject to review in this Court.

5.      Venue of this action is proper in Hillsborough County, Florida, because the causes of action accrued in Hillsborough County, Florida, and the Subject Property at issue is located in Hillsborough County.

6.      All conditions precedent to the institution of this action have occurred, have been performed, or have been waived.

2

7.     The Martins have retained the law firm of Shumaker, Loop & Kendrick, LLP to represent them in this action, and are obligated to pay reasonable attorneys' fees and costs to Shumaker, Loop & Kendrick, LLP for its services in this matter.

**Certiorari Record**

8.     In Count III of this Complaint, the Martins seek a common law writ of certiorari pursuant to Article V, Section 5 of the Florida Constitution, Rule 1.630, Florida Rules of Civil Procedure, and Rule 9.100(c)(2), Florida Rules of Appellate Procedure.[1]

9.     Rule 1.630(b)(3), Fla. R. Civ. P., provides that "a copy of as much of the record as is necessary to support the plaintiff's complaint shall be attached." Similarly, Rule 9.100(g)(4), Fla. R. App. P., directs that a Rule 9.220 Appendix must accompany a petition for writ of certiorari. Thus, an Appendix applicable to this proceeding, and containing a copy of as much of the record as is necessary to support the prayer for relief in Count III, is being filed simultaneously herewith, with references to appropriate pages of the supporting Appendix where applicable.

10.     Reference to documents contained in the Appendix shall be as follows: (Tab ___:P __). As such, the reference to (Tab 3:P0004) refers to the

---

[1] While the more general rule (9.100, Fla. R. App. P.) refers to petitions and petitioners, the more specific rule (1.630, Fla. R. Civ. P.) refers to a complaint when the request for relief is filed in the Circuit Court.

document found at Tab 3 of the Appendix, followed by the stamped page reference appearing in the lower right hand corner of the record document.   In addition, references to the transcript of the ARC hearing, held on August 4, 2008, found at Tab J of the Appendix, shall be made as follows:   (Tab J: P ____ : L ____ ), and references to the transcript of the City Council's October 2, 2008 hearing, found at Tab M of the Appendix, shall be made as follows:   (Tab M: P ____ : L ____ ).   As such, the reference to (Tab J:P0025:L19) refers to page number 25 of the ARC hearing transcript at line 19, which can be found behind Tab J of the Appendix.

### General Allegations

11.    The Martins own the Subject Property which is located on the corner of South Delaware Avenue and West Inman Avenue.  The physical address for the Subject Property is 801 South Delaware Avenue, Tampa, Florida.  (Tab A:P0005-0006; Tab G:Sub Tab 2:P0021; Tab J:P0144:L22).

12.    The zoning designation for the Subject Property is RS-60 (Residential Single-Family).  (Tab A:P0007).

13.    The Subject Property is located within the Hyde Park Historic District (the "District").  Pursuant to the City of Tampa Zoning Code, before any necessary permits are issued for new construction within the District, the ARC must issue a COA.  City of Tampa Code, §27-216(a).

14.   The ARC is charged with the duty and responsibility of determining, or attempting to determine, whether or not any planned "new" construction complies with the criteria set forth in the <u>City of Tampa Zoning Code</u>, specifically Section 27-216(l)(1-11) (the "Consideration Points") stated as follows:

"When the applicant wishes to undertake new construction...the ARC shall consider the compatibility of the new construction with the existing character of the district...Compatible design shall mean architectural design and construction that will fit harmoniously into the district...New construction shall be compatible in scale, materials and quality of construction with adjacent buildings and structures that have been designated.

The ARC shall include the following points in its consideration of an application for new construction:

(1)  Scale: height and width;

(2)  Massing and building form;

(3)  Setback;

(4)  Orientation and site coverage;

(5)  Alignment, rhythm and spacing;

(6)  Maintaining materials within the historic district...;

(7)  Trim and detail; Link between old and new;

(8) Façade proportions and window patterns;

(9) Entrances and porch projections;

(10) Roof forms; and,

(11) Maintaining quality of design and construction within the

historic district."

City of Tampa Zoning Code, §27-216(l).

15.    In addition to the Consideration Points described above, the ARC adopted the "Hyde Park Design Guidelines" that apply to rehabilitation and new construction within the District (the "HPDG"), separate from the Consideration Points, and are made up of 136 pages of suggestions and comments related to construction of improvements within the District. It is important to note that when the HPDG were adopted into the City of Tampa Zoning Code in 2002, they were adopted as part of Chapter 17.5, rather than Chapter 27, City of Tampa Zoning Code. Section 17.5-192 states, in part, that:

"The 1988 edition, as revised by the September, 1989, September 1991, and September 2002 Amendments, of the Hyde Park Design Guidelines is hereby adopted by reference, and, therefore, has the force and effect of law.

City of Tampa Code, §17.5-192.

16.   Upon determination by the ARC that proposed new construction complies with the criteria as set forth in the <u>City of Tampa Zoning Code</u> described above and with the HPDG, a COA is issued and a building permit to complete the construction may be obtained by the applicant.  <u>City of Tampa Zoning Code</u>, §27-216(g).

17.   In the event that any proposed new construction is determined by the ARC not to comply with the criteria prescribed by Section 27-216(l)(1-11) and/or with the HPDG, an applicant/homeowner such as the Martins is prevented from obtaining a building permit, and cannot proceed with new construction.  <u>City of Tampa Zoning Code</u>, §27-216.

18.   Under <u>City of Tampa Zoning Code</u>, Section 27-216(h), upon the denial of an application for a COA, an applicant may not reapply for a COA for a twelve-month period following the date of denial.  <u>Id.</u>, Section 27-216(h).

19.   The Martins purchased the Subject Property in April, 2008.  Prior to being purchased by the Martins, the Subject Property had fallen into a state of considerable disrepair, both interiorly and on the exterior.  (Tab A:P0005-0006; Tab H:Sub Tab 1:P0037-0045; Tab G:Sub Tab 3:P0022-0027; Tab J:P0145:L15-16).

20.   Immediately upon purchasing the Subject Property, the Martins began an intense campaign to rehabilitate the interior and exterior of the structure in an attempt to bring the home into the state it was originally constructed in. Id.

21.   The Martins retained the services of Wisdom Structural, who worked closely with ARC staff, to complete a line for line restoration of the structure. Id.

22.   The Martins, seeing other wrought iron fences installed on residential properties in close proximity to the Subject Property, and out of concern for the safety of their children due to the fact that the structure on the Subject Property has eight (8) exterior entrances and residents in the community frequently approach the front door seeking to tour the interior of the home, sought approval for installation of a custom wrought-iron fence along the side and front yard of the Subject Property, which custom fence would tie into an already existing wood fence in the side and back yards of the Subject Property. (Tab A:P0001-0009; Tab H:P0046-0074; Tab M:P0209:L2-5).

23.   The Martins retained Wade Trim, Inc., to assist in preparing a topographic survey of the Subject Property and a site plan and elevations depicting the location, design and height of the proposed custom fence. (Tab J:P0145).

## Application for Certificate of Appropriateness

24.   On June 11, 2008, the Martins filed their application for COA, with the application being designated as "ARC 08-143," seeking approval for

8

"Installation of wrought iron fence along perimeter of property." (Tab A:P0001-0009).

25.   The original ARC 08-143 application filed by the Martins contained a request for variance seeking an increase in the height of the proposed new fence. Subsequent to the filing of ARC08-143, but prior to the public hearing held by the ARC, the Martins revised the application to eliminate the requested variance, a revised site plan and elevations were submitted, and the proposed new construction proceeded to public hearing solely on the issue of the location, design and materials of the proposed custom fence. (Tab A:P0004; Tab E:P0013-0015; Tab J: P0146:L1-3, P0149:L12-18, P0154: L8-9, P0158:L6-7).

26.   Pursuant to the proscribed procedure for COA applications, an applicant for a COA is permitted to meet with ARC staff prior to any decision on an application for a COA.  Such meetings are for the purpose of gaining and understanding of what might be required for the applicant to receive COA approval. City of Tampa Code, §27-216.

27. In this case, counsel for the Petitioners met informally with ARC staff on June 6, 2008 to discuss the application for COA and confirm the documents required to be filed therewith.  At that time, ARC staff advised counsel for the Petitioners that it would recommend denial of any request for a front yard fence within the District.

28.   On June 11, 2008, the application for COA was filed with ARC staff which application included a site plan and graphic depiction of the proposed design of the custom fence.  ARC staff, while confirming its intention to recommend denial of the application for COA, suggested that the front gate be relocated at the top of the steps, that all gates be redesigned to open inward towards the Subject Property and away from the sidewalk, and that the location of the contact box for the vehicular gate be shown on the site plan. (Tab A:P0001).

29.   On June 18, 2008, counsel for Petitioners met on-site at the Subject Property with ARC and Zoning staff to discuss the City's required method of measuring heights of fences and to confirm that a reduction in the height of the fence to thirty-four (34) inches was permitted and would not trigger the need for a variance from the height regulations in Section 27-133 of the <u>City of Tampa</u> <u>Zoning Code</u>.

30.   On July 2, 2008, counsel for Petitioners attended a meeting of the City's Historic Preservation Design Review Committee.  ARC staff was present at this meeting and provided written comments prepared by staff with the City's Transportation Division, Land Development Coordination, and Parks and Recreation Department, none of which expressed objection to the application for COA.   ARC staff again confirmed its intention to recommend denial of the application for COA. (Tab B:P0010; Tab C:P0011; Tab D:P0012).

31.    On July 18, 2008, a revised site plan and elevations ("Site Plan and Elevations") were filed with ARC staff, which documents incorporated the suggestions offered by ARC staff on June 11, 2008. (Tab E:P0013-0015).

32.    On August 4, 2008, prior to the public hearing, the ARC staff issued a report ("Staff Report") on ARC 08-143. The Staff Report indicates simply that:

> "The application is inconsistent with the "Hyde Park Design Guidelines" (HPDG) for the following reasons: Reference pages 99-101 of the HPDG (see attachment). Reference is also made to the "Secretary of the Interior Standards for Rehabilitation," pages 73, 74, 77, and 80."

(Tab F:P0016-0019).

### ARC Public Hearing

33.    On August 4, 2008, a public hearing was held before the ARC, which included presentations by ARC Staff and representatives of the Martins, and allowed comments by members of the public. (Tab J:P0144-0179).

34.    At the hearing on August 4, 2008, counsel for Petitioners indicated that the Martins were seeking the ARC's approval to install a custom wrought-iron fence behind the existing retaining wall along the side and front yard of the Subject Property, which would tie into the existing wood fence. The ARC was advised that the height complied with applicable zoning regulations and did not trigger the need for a variance. The ARC was advised to ignore that portion of the original application for COA that referred to a variance, and to focus on a comprehensive

application of the <u>Tampa City Zoning Code</u>, the Consideration Points and the HPDG, to ARC 08-143. (Tab J:P0145-0146).

35.    Based upon the Staff Report and ARC staff's presentation at the public hearing, the so-called "inconsistency" of the application for COA with the HPDG was premised solely on the "location" of the proposed fence, i.e., the front yard and/or in front of the primary façade for the Subject Property.    Staff represented that it had no objection to the proposed design or materials of the custom fence. (Tab J:P0154:L8-9, P0158:L6-7).

36.    Contrary to unsubstantiated folklore that fences are not permitted in front yards of property located in the District, counsel for Petitioners referred the ARC to Section 27-133, <u>City of Tampa Zoning Code</u>, which regulates the location, height, and permitted materials of fences throughout the City, specifically, Subsection 27-133(e) *Front Yards* provides that:

> "(1)    Within the single-family residential zoning districts and YC-2 and YC-4 subdistricts, fences and walls may be located within required front yards provided that the height does not exceed three (3) feet for fences or walls made of opaque materials, or four (4) feet for fences built of transparent materials, which do not obstruct light, air and visibility."

(Tab H:P0076; Tab J:P0148-0153), <u>City of Tampa Zoning Code</u>, §27-133(e).

37.    Counsel for Petitioners advised the ARC that subsection 27-133(e) expressly permits fences to be located within the front yards of property located

within single family residential zoning districts throughout the City, provided that the fences comply with certain height restrictions or material restrictions. This section applies to fences in single-family residential zoning districts throughout the City and draws no distinction for properties within historic districts like the District. (Tab J:P0148:L16-23, P0149:L1).

38.   Counsel for Petitioner further advised the ARC that, pursuant to Ordinance No. 2006-169, adopted by the City Council of the City of Tampa on July 13, 2006, Section 27-133 of the City of Tampa Zoning Code was amended with respect to material for fences, with the amendment expressly allowing further regulation of fence materials within the historic districts through design standards or overlay district regulations ("2006 Amendment").   (Tab H:P0078-9; Tab J:P0149:L1-13).

39.   The 2006 Amendment added the following language: "or as may be further regulated by Historic District design standards or Overlay District regulations" to Section 27-133(c).   The 2006 Amendment allowed the City, through the ARC, to restrict fence materials beyond that which is otherwise permitted throughout the City. Although clearly presented with the opportunity to add similar restrictive language in Subsection 27-133(e), dealing with location of fences, and while also specifically amending Subsection 27-133(e)(2) to allow front yard fences for all residential uses in any zoning district, similar language

allowing further regulation by the ARC through the HPDG was not added, requiring this Court to recognize that in the absence of such specific amendment allowing the ARC to use the HPDG to further regulate the location of fences, as it was expressly permitted to with fence materials, the inescapable conclusion is that the location of fences within the District may not be further restricted or regulated through the HPDG. Id.

40.    The HPDG themselves, including pages 99-101 as referenced in the Staff Report, are vague and inconsistent on the issue of location for fences. (Tab F:P0016-0019; Tab J:P0149:L13-20).

41.    Page 99 of the HPDG specifically provides:

"Fence height should conform to the City of Tampa Zoning Code. Fences or walls along the primary façade should fall behind the building setback line. . . ."

(Tab F:P0017).

42.    It is noteworthy that the HPDG says only that fences or walls "along the primary façade" should fall behind the building setback, but it does not say that such fences "shall" fall behind that line, or that it is mandatory that such fences be behind the primary façade. Id.

43.    ARC staff, in preparing its Staff Report and during its presentation to the ARC, ignored Section 27-133, City of Tampa Zoning Code, ignored page 99 of

the HPDG, and instead relied exclusively on page 101 of the HPDG, which states that:

> "It is Not Permissible to . . .
>
> *        *        *
>
> Locate fences in the front yard setback or front building line of an existing structure."

(Tab F:P0016; Tab J:P0153-0157).

44.    Counsel for Petitioner advised the ARC that even, if one were to somehow conclude the ARC was authorized to restrict the location of fences despite the clear language in Section 27-133, City of Tampa Zoning Code, the HPDG are inconsistent on the issue of location for fences. Page 101 of the HPDG states it is impermissible to locate fences in front yards, but page 99 of the HPDG makes the decision clearly permissive as opposed to prohibitive.   It is also important to note that page 99 of the HPDG specifically states that "fence height should conform to the City of Tampa Zoning Code," referring to Chapter 27 of the City of Tampa Zoning Code and the ARC's authority pursuant to Section 27-214 to grant variances from height regulations. As previously pointed out, Section 27-133 specifically provides for front yard fences within single-family residential zoning districts throughout the City, subject only to height and material restrictions, with no reference to limitations in historic districts, or the HPDG. (Tab J:P0148:L13-22, P0149:L13-20, P0152:L2-7).

45.    The application for COA at issue in this matter is expressly permitted in Section 27-133 of the City of Tampa Zoning Code, and is consistent with the HPDG when viewed as a whole.   Zoning regulations and ordinances are in derogation of private rights of ownership and words used in the zoning ordinances must be given their broadest meaning when there is not definition or clear intent to the contrary and the ordinance must be interpreted in favor of the property owner. (Tab J:P0153:L3-13).

46.    Moreover, the application for COA is consistent with precedent previously set by ARC staff, the ARC, and the City Council when similar requests for front yard fences have been presented to the ARC and/or appealed to City Council in the past. (Tab J:P0149-0153).

47.    The property located at 901 South Newport Avenue, within the District and approximately one (1) block away from the Subject Property, received approval in September 1997 to install a front yard fence, the design and location of which is similar to that proposed for the Subject Property and the height of which required a variance.   The ARC denied the requested variance for the proposed height of 7 feet, 6 inches, however, approved the design and location during its meeting in July 1997.   The property owner appealed the denial of the variance to City Council and on September 9, 1997, City Council overturned the ARC's

decision and approved the height variance. (Tab H:P0049; Tab J:P0150:L1-12, P0155:L12-14).

48.    The property located at 1403 Bayshore Boulevard, within the District, on appeal from an ARC denial, received approval from City Council in April 2005 to install a front yard fence. (Tab H:P0061; Tab J:P0150:L12-17, P0155:L15-17)

49.    The property located at 1715 Bayshore Boulevard, within the District, received ARC staff approval in August 2005 for a new retaining wall and an 18 inch wrought-iron fence above the retaining wall within the front yard. (Tab J:P0151:L2-8, P0155:L4-10:).

50.    Other examples of front yard fences on properties within the District, but for which no record could be offered by ARC staff to support approval of same by the ARC or City Council, further support Petitioners' position as to the appropriateness of the proposed new construction at the Subject Property. (Tab J:P0151:L8-23; Tab H:P0046-0048, P0064-0074)

51.    Although front yard fences may not reflect the predominant pattern of development within the District, front yard fences similar to that proposed in the application for COA, as previously approved by the ARC staff, the ARC and City Council, are evidence of compatible development within the neighborhood and the District. (Tab J:P0153; Tab M:P0197:L10-13).

52.    During the hearing on August 4, 2008, Commissioner Roberts explained his understanding of the limitations on the authority of the ARC established by the CITIVEST case (Tab H: Sub Tab 12:P0091-0098), that the ordinance (27-216) had not successfully given the ARC certain kinds of authority that the City Council was certainly empowered to give, but that his understanding was that City Council had amended the ordinance subsequent to the Citivest decision and corrected the so-called problem.   Although the Assistant City Attorney to the ARC was unable to confirm whether the City of Tampa Zoning Code had been amended to grant the ARC greater authority, Councilman Roberts impermissibly decided that, even in the absence of any legal authority to support his position on this issue, he was "going to proceed on that assumption" and acted in accordance with that assumption. (Tab J:P0160).

53.    When discussing the differences on page 99 versus page 101 of the HPDG, as described above, ARC Chairman Ross chose to focus on one sentence on page 101 and concluded that the HPDG did not leave room for interpretation, and Commissioner Roberts testified that he found the statutory inconsistency argument to be "one of the most absurd arguments on which to base a decision that I can possibly imagine.  I am gonna go so far as to deliver this message to City Council." (Tab J:P0173:L13-14, P0174:L16-17, P0175:L2-6).

54.    Commissioner Ferrill acknowledged the confusion in the HPDG, recognized the examples where ARC's decisions were consistently overturned by the City Council, questioned the rationale for allowing 6 foot fences along a side yard and no fence in a front yard, and concluded that it was inappropriate to "again put an applicant in position where they're gonna go to City Council and it's just gonna come back because it always has." (Tab J:P0176:L17-23, P0177:L1-11).

55.    No evidence was presented to support Commissioner Roberts' assumption. Moreover, testimony offered by ARC staff was factually incorrect. In one instance, ARC staff represented that the fence installed at 901 South Newport Avenue created an incompatible situation when compared with residences across the street. (Tab J:P0155:L22-23, P0156:L1-3). This alleged incompatible situation is the same fence, the design and location of which was approved by the ARC and the height of which was specifically approved by the City Council in September, 1997. Approval by the City Council and the ARC, even if such approval does not follow the predominant pattern of development within the District, is nevertheless compatible development. A design that is approved by the ARC and the City Council that may not technically follow the predominant pattern of development is not substantial and competent evidence of incompatible development. (Tab J:P0150:L1-12, P0155:L12-14; Tab M:P0197:L10-13). In another instance, ARC staff attempted to describe the 18 inch wrought-iron fence installed on the property

located at 1715 Bayshore Boulevard as a retaining wall and not a fence. (Tab J:P0155:L5-8, P0162:L6-12).

56. Once ARC staff concluded its presentation, and upon seeing that no individuals from the public wished to comment on the COA application, Chairman Ross immediately closed the public hearing without allowing Petitioners to rebut or respond to anything in the staff's presentation. (Tab J:P0173:L9-11).

57. The ARC found the application for COA to be inconsistent with the HPDG and voted "Denial" of the COA. (Tab J:P0178:L5-20).

58. By letter dated August 5, 2008, the ARC formally notified Petitioners, through counsel, of the Denial, finding that:

> "The proposed project is inconsistent with the "Hyde Park Design Guideline" of the City of Tampa, because: The guidelines expressly prohibit front yard fences and even if they are read not to expressly prohibit such fences, that the open front yard is among the most significant and character defining features of this historic district and must be respected if the essential character of the district is to be observed and maintained."

(Tab K:P0180).

## City Council Appeal Hearing

59. Pursuant to City of Tampa Zoning Code Section 27-373(c), on August 6, 2008, Petitioners timely appealed the ARC's decision to the City's City Council. The hearing before City Council was scheduled for October 2, 2008. (Tab L:P0181-0183).

60.    The standard of review on appeal to the City Council is whether: (1) the board's decision was supported by competent, substantial evidence; (2) whether due process was accorded; and (3) whether the essential requirements of the law have been observed. On appeal, the City Council shall only review the record established during the public hearing by the board or commission and hear argument. New evidence or testimony is not permitted to be introduced during appeal hearing. City of Tampa Zoning Code, §27-313(c)(18).

61.    At the October 2, 2008 hearing, counsel for the Petitioners advised the City Council that the appeal was filed because the ARC's decision (i) failed to follow the essential requirements of the law, (ii) was not based on competent, substantial evidence, and (iii) failed to provide Petitioners' requisite due process. (Tab M:P0194:L6-13).

62.    Counsel for Petitioners demonstrated that the ARC's decision was made not based on comprehensive and consistent application of the Zoning Code, the Consideration Points, and/or the HPDG. Rather, the ARC's decision, as demonstrated by Commissioner Roberts' testimony and Chairman Ross' testimony, was based upon an assumption that the Section 27-216, City of Tampa Zoning Code, had been revised to correct a so-called "problem" highlighted by the Court in the Citivest decision and that page 101 of the HPDG did not leave room for interpretation by the ARC. (Tab M:P0194-0198).

63.    Counsel for the Petitioners further pointed out that the alleged "fix" added language which requires  new construction to comply with Section 27-216, even if Section 27-216 requires development and/or construction that is more restrictive than applicable requirements found elsewhere in the <u>City of Tampa Zoning Code</u>.  Section 27-216 is not more restrictive than applicable requirements found elsewhere in the <u>City of Tampa Zoning Code</u>.  Section 27-216 does not address or attempt to regulate the placement of fences on property within the District.  (Tab M:P0204-205).

64.    The only possible restriction on the placement of front yard fences may be found in the HPDG, which guidelines are ambiguous, vague and inconsistent, and were not adopted in Section 27-216 or elsewhere in the <u>City of Tampa Zoning Code</u>.  Rather, the HPDG were adopted in Chapter 17.5 and are thus not the "fix" referred to by either the ARC or City Council.  (Tab F:P0017-0019).

65.    The <u>City of Tampa Zoning Code</u> expressly allows front yard fences in residentially zoned districts throughout the City including the zoning district in which the Subject Property is located.  Combined with the inconsistency of the HPDG (pages 99, 101), and the consistent precedent established by prior action of City Council and the ARC, approval of the application for COA in this case was mandated.

66. During the October 2, 2008 appeal hearing, Councilman Dingfelder, in an attempt to distinguish the Subject Property from other similarly situated property located within the District which were permitted front yard fences, testified that property on Bayshore [Boulevard] deserved different treatment. Councilman Dingfelder opined that the prohibition on front yard fences (with the exception of property located on Bayshore Boulevard) was mandated elsewhere in "his district." However, Councilman Dingfelder did suggest that the Code be strengthened up and tightened up if what was "abundantly clear in common sense" was not "abundantly clear on paper." (Tab M:P0202:L12-23, P0203:L1-9).

67. Whatever might be abundantly clear to Councilman Dingfelder's common sense is not clearly or expressly stated in either the City of Tampa Zoning Code, the Consideration Points, or the HPDG. Not only does the City of Tampa Zoning Code expressly allow front yard fences in all residential zoning districts throughout the City, there is absolutely no provision in any of the aforementioned regulations that suggest, permit or authorize disparate treatment for property located within the District on Bayshore Boulevard. (Tab F:P0017-0019; Tab H:Sub Tab 8:P0075-0076)

68. At the conclusion of the October 2, 2008 hearing, a motion was made to uphold the ARC's decision. The motion carried 4-2. (Tab M:P0205-0211). At no point during its deliberations, did the City Council address the applicable

standard of review and decide whether the ARC's decision: (1) was based upon competent, substantial evidence; (2) followed the essential requirements of the law; and (3) accord due process.

69.     City Council took action in this appeal as if the standard of review were *de novo* and City Council was sitting as the original trier of fact. At one point, Council was advised by the City that "you as well as the ARC has the discretion to review that and apply the guidelines." Moreover, the City Council did not provide a description of any record evidence which justified their denial of the Petitioners' appeal or application for COA. (Tab M:P0199:L21-22, P0205-0211).

70.     By correspondence dated October 8, 2008, the City formally notified the Martins' that the administrative appeal hearing was closed, and the decision of the ARC affirmed. No reasons or explanation of the City's decision are provided in the letter. (Tab N:P0212).

71.     Petitioners have exhausted any and all administrative remedies available to them with respect to all claims presented by this Petition.

72.     All conditions precedent to each of the claims brought by Petitioners in this Petition have been satisfied or have been waived.

73.     The claims pled in this Petition are pled in the alternative.

## STANDARD OF REVIEW

74.   With respect to Count III of this Complaint, the Petition for Writ of Certiorari, the standard for review by this Court of the action of the City Council is: (1) whether procedural due process was accorded; (2) whether the essential requirements of law have been observed; and (3) whether the administrative findings and judgment are supported by competent substantial record evidence before the administrative board or council. *Board of County Commissioners of Brevard County v. Snyder,* 627 So.2d 469, 476 (Fla. 1993), citing to *City of Deerfield Beach v. Vaillant,* 419 So. 2d 624, 626 (Fla. 1982). *See also, Haines City Community Development v. Heggs,* 658 So. 2d 523, 530 (Fla. 1995) (same).

### COUNT I
### Petition Seeking Declaratory And Injunctive Relief
### (Based on Facial Invalidity of Consideration Points and HPDG)

75.   Petitioners reallege and incorporate by reference the allegations of Paragraphs 1 through 73 above, as well as the documents in the Appendix referenced in those paragraphs, as if fully restated herein.

76.   This is an action brought by the Martins against the City seeking declaratory and injunctive relief pursuant to Florida Statutes, Section 86.011, *et seq.*

77.   The Consideration Points and the HPDG, on their face, are vague and insufficiently definite and certain to provide any limit on the discretion of the City,

and/or the ARC, in exercising discretion over approval or denial of an application for COA.

78.   The Consideration Points and the HPDG, on their face, are so vague they are subject to arbitrary and/or capricious application as to an application for a COA.

79.   The Consideration Points and the HPDG, on their face, fail to inform the City, or any of its agencies, of the weight to be given to any particular guideline with respect to any other guideline or with respect to the City of Tampa Zoning Code.

80.   The Consideration Points and the HPDG, on their face, are vague in that they are so unclear as to what action is permissible and what action is prohibited, that persons of common intelligence must guess as to their meaning and may differ as to their application.

81.   The Consideration Points and the HPDG, on their face, are vague in that they allow an opportunity for the exercise of arbitrary discrimination between applicants who attempt to comply with the Consideration Points and the HPDG.

82.   The Consideration Points and the HPDG, on their face, are vague in that they do not provide sufficient specificity such that the City and/or any of its agencies is not prevented from acting upon whim, caprice, or in response to pressures which cannot be ascertained or corrected.

83.    The facial invalidity and vagueness of the Consideration Points and the HPDG render them imprecise, non-objective, and empower the City and/or the ARC to unfairly discriminate against certain applicants based on subjective criteria, or no criteria at all.

84.    It is the legal position of Petitioners that because the Consideration Points and the HPDG are vague as stated above, they are unconstitutional, void, and incapable of being applied to the COA for the Subject Property, pursuant to the Fifth and Fourteenth Amendments of the United States Constitution, Article 1, Section 2 of the Florida Constitution, and Article 1, Section 9 of the Florida Constitution.

85.    It is the legal position of Petitioners that because the Consideration Points and the HPDG are unconstitutional and void on their face, the Martins have an absolute right to a COA for the new construction in accordance with the application, Site Plan and Elevations submitted, that the City cannot deny the Martins such right, and that the City is required to accept, process, and issue the COA to the Martins, as well as the building permits necessary for construction of the custom wrought-iron fence upon the Subject Property in accordance with the application, Site Plan and Elevations.

86.    It is the legal position of the City that the Consideration Points and the HPDG, on their face, are constitutional, enforceable, and were properly applied to deny Petitioners' application for COA.

87.    As a result of the above dispute, the Martins are in doubt and are uncertain as to their right to construct the custom wrought-iron fence on the Subject Property in accordance with their application for COA, including the Site Plan and Elevations, as well as any right they have to necessary permits which would allow such new construction.  The Martins are entitled to have such doubt and uncertainty removed.

88.    Pursuant to <u>Florida Statutes</u>, Section 86.061, upon a declaration from this Court confirming that the Martins' legal position referenced above is the correct legal position, the Martins will have no adequate remedy at law and, therefore, are entitled to supplemental relief in the form of a mandatory injunction requiring the City:  to accept the Martins' application for COA for the new construction, pursuant to the Site Plan and Elevations submitted; to process the application for a COA; and to issue the necessary building permits for construction of the custom wrought-iron fence in accordance with the Site Plan and Elevations.

WHEREFORE, Petitioners/Martins respectfully request that this Court grants the following relief:

A.    Issuance of a Declaratory Judgment as follows:

1. Declaring that the legal position of the Martins, as stated above, is the correct legal position;

2. Declaring that the Consideration Points and the HPDG, on their face, are constitutionally infirm, void, and unenforceable;

3. Declaring that Petitioners/Martins have an absolute right to a COA, and to proceed with the new construction of the custom wrought-iron fence on the Subject Property in accordance with the application, Site Plan and Elevations; and

4. Declaring that the City has a legal obligation to accept, process and issue the application for COA, and to issue the permits necessary for construction of the custom wrought-iron fence on the Subject Property, in accordance with the Martins' application and the Site Plan and Elevations submitted in connection therewith;

B. Issuance of a Mandatory Injunction in favor of the Petitioners/Martins and against the City, requiring the City to accept the application for COA submitted by the Martins, to timely process said application and grant a COA, and to issue

the necessary building permits for construction of the custom wrought-iron fence on the Subject Property, in accordance with the Site plan and Elevations by the Martins; and

C.   Such further and additional relief as the Court may deem equitable and just.

## COUNT II
### Petition Seeking Declaratory Injunctive Relief
### (Based on Invalidity of Consideration Points and HPDG as Applied)

89.   Petitioners reallege and incorporate by reference the allegations of Paragraphs 1 through 73 above, as well as the documents in the Appendix referenced in those paragraphs, as if fully restated herein.

90.   This is an action brought by Petitioners against the City seeking declaratory and injunctive relief pursuant to Florida Statutes, Section 86.011, *et seq.*

91.   The Consideration Points and HPDG, as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District, are vague and insufficiently definite and certain to provide any limit on the City's (and/or the ARC's) discretion in approving or denying such an application for COA.

92.   The Consideration Points and HPDG, as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the

front yard of the Subject Property within the District, are vague in that they are subject to whimsical and/or capricious application as to an application for a COA.

93.    The Consideration Points and HPDG, as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District, are vague in that they fail to inform the City (and/or the ARC or any other agencies within the City) of the weight to be given each of the Consideration Points and the HPDG.

94.    The Consideration Points and HPDG, as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District, are vague in that they are so unclear as to what action is permissible and what action is prohibited, that persons of common intelligence must guess at their meaning and may differ as to their application.

95.    The Consideration Points and HPDG, as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District, are vague in that they allow an opportunity for the exercise of arbitrary discrimination between applicants who attempt to comply with the Consideration Points and the HPDG.

96.    The Consideration Points and HPDG, as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the

front yard of the Subject Property within the District, are vague in that they do not provide a sufficient specificity such that the City (and/or the ARC or other agencies within the City) is not prevented from acting upon whim, caprice, or in response to pressures which cannot be ascertained or corrected.

97. The Consideration Points and HPDG, as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District, are vague in that they are imprecise, inconsistent, non-objective, and empower the City (and/or the ARC or other agencies within the City) to discriminate against certain applicants based upon subjective criteria, or no criteria at all.

98. It is the legal position of the Petitioners that because the Consideration Points and HPDG, as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District, are vague as stated above, they are unconstitutional, void, and cannot be applied to the Subject Property or the application for COA, pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, Article 1, Section 2 of the Florida Constitution, and Article 1, Section 9 of the Florida Constitution.

99. It is the legal position of the Petitioners that the vagueness of the Consideration Points and HPDG, as set forth herein, is incurable with respect to

Petitioners' application for COA involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District.

100.   It is the legal position of Petitioners that because the Consideration Points and HPDG are unconstitutional and void as applied to Petitioners' application for COA involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District, that the Martins have an absolute right to a COA for the new construction in accordance with the application, Site Plan and Elevations submitted, that the City cannot deny the Martins such right, and that the City is required to accept, process, and issue the COA to the Martins, as well as the building permits necessary for construction of the custom wrought-iron fence upon the Subject Property in accordance with the application, Site Plan and Elevations.

101.   It is the legal position of the City that the Consideration Points and HPDG, as applied to Petitioners' application for COA, involving construction of a custom wrought-iron fence in the front yard of the Subject Property within the District, are constitutional, enforceable, and were properly applied to deny Petitioners' application for COA.  As a result, it is the legal position of the City that the Martins have no right to construct the custom wrought-iron fence in accordance with the application, Site Plan and Elevations, and, further, that the Martins have no right to issuance of any permits necessary for such construction.

102.   As a result of the above dispute, Petitioners are in doubt and are uncertain as to their right to construct the custom wrought-iron fence in accordance the application, Site Plan and Elevations, as well as their right to the necessary building permits which would allow such construction.   Petitioners/Martins are entitled to have such doubt and uncertainty removed by this Court.

103.   Pursuant to Florida Statutes, Section 86.061, upon a declaration from this Court confirming that Petitioners'/Martins' legal position referenced above is the correct legal position, the Martins will have no adequate remedy at law and, therefore, are entitled to supplemental relief in the form of a mandatory injunction requiring the City to process and grant the application for COA, in accordance with the application, Site Plan and Elevations submitted, and to issue the permits necessary for construction of the custom wrought-iron fence in accordance with the application, Site Plan and Elevations.

WHEREFORE, Petitioners/Martins respectfully request that this Court grants the following relief:

    A.   Issuance of a Declaratory Judgment as follows:

        1.   Declaring that the legal position of the Martins, as stated above, is the correct legal position;

        2.   Declaring that the Consideration Points and HPDG, as applied to Petitioners' application for COA involving a

custom wrought-iron fence in the front yard of the Subject Property within the District, are constitutionally infirm, void, and unenforceable;

3.  Declaring that Petitioners/Martins have an absolute right to a COA, and to proceed with the new construction of the custom wrought-iron fence on the Subject Property in accordance with the application, Site Plan and Elevations; and

4.  Declaring that the City has a legal obligation to accept, process and issue the application for COA, and to issue the permits necessary for construction of the custom wrought-iron fence on the Subject Property, in accordance with the Martins' application, Site Plan and Elevations submitted in connection therewith;

B.  Issuance of a Mandatory Injunction in favor of the Petitioners/Martins and against the City, requiring the City to accept the application for COA submitted by the Martins, to timely process said application and grant a COA, and to issue the necessary building permits for construction of the custom

wrought-iron fence on the Subject Property, in accordance with the application, Site Plan and Elevations; and

C.  Such further and additional relief as the Court may deem equitable and just.

## COUNT III
### Petition for Writ of Certiorari
### (Appeal Pursuant to Florida Rule of Civil Procedure 9.100)

104.  Petitioners reallege and incorporate by reference the allegations of Paragraphs 1 through 74, above, as well as the documents in the Appendix referenced in those allegations, as if fully restated herein.

105.  This is an action brought by Plaintiffs/Petitioners, the Martins, against Defendant/Respondent, the City, seeking a common law writ of certiorari pursuant to Rule 1.630, Florida Rules of Civil Procedure and Rule 9.100(c)(2), Florida Rules of Appellate Procedure.

106.  This Court has jurisdiction pursuant to Article V, Section 5(b) of the Florida Constitution, and Rule 9.030(c), Florida Rules of Appellate Procedure.

107.  The Martins request this Court, sitting in its appellate capacity, to review final agency action of a local government:  that is, the decision of the City, through its City Council, rendered at the City Council Appeal Hearing on October 2, 2008, and then confirmed in a letter dated October 8, 2008, that the Martins' application for a COA from the ARC be denied.

108. In its October 8, 2008 letter, the City stated no bases for its affirming of the decision of the ARC's denial of the application for COA.

109. The Martins request that this Court find that: (i) the City's denial of Martins' application for a COA was not supported by competent substantial evidence; (ii) the City denied the Martins due process of law; and (iii) that the City failed to observe the essential requirements of the law in reaching its decision.

110. The Martins specifically references and incorporate herein again the competent substantial evidence outlined above and as set out in the Appendix filed herewith.

111. The Martins' Petition for Writ of Certiorari must be granted because the City's denial of the Martins' application for a COA was not supported by competent substantial evidence in the record. *Orange County v. Quadrangle Development Co.*, 780 So.2d 994, 996 (Fla. 5th DCA 2001) (writ of certiorari must be granted where decision below is unsupported by competent substantial evidence); *Redner v. City Council of the City of Tampa*, 2002 WL 32100836 (Fla. Cir. Ct.) (Nov. 5, 2002) (same). Competent substantial evidence is evidence that "a reasonable mind would accept as adequate to support a conclusion." *Lee County v. Sunbelt Equities*, 619 So.2d at 1002-1003.

112. The overwhelming record evidence established conclusively that Martins' application for COA should have been granted.  As stated above in more detail, the evidence showed that:

a. Section 27-133, <u>City of Tampa Zoning Code</u>, permits the placement of fences in front yards within single-family residential zoning districts so long as the height does not exceed three (3) feet for fences built of opaque materials, or four (4) feet for fences built of transparent materials which do not obstruct light, air and visibility.

b. The Subject Property is zoned RS-60 located in a single-family residential zoning district.

c. The fence, for which approval is requested in ARC 08-143, is proposed to be located along the perimeter of the Subject Property, will be stepped back six (6) inches behind the existing retaining wall, will be at a height no greater than thirty-four (34) inches above the top of the retaining wall, and will be constructed of wrought-iron so as to not obstruct light, air or visibility.

d. The HPDG have been interpreted and applied by the ARC staff, ARC and City Council to permit front yard fences within the District.

e. The Subject Property is located no less than one (1) block from a property with a front yard fence, the design and location of which was approved by the ARC and the height of which was approved by the City Council.

f. Other properties within the District have received approval by ARC staff, the ARC and City Council for construction of front yard fences.

g. ARC staff found the design and materials for the custom fence proposed in the application for COA to be consistent with the Consideration Points and the HPDG.

h. Zoning staff found the height of the front yard fence requested in the application for COA to be consistent with the City of Tampa Zoning Code without triggering the need for a height variance.

i. None of the members of the City's Historic Preservation Design Review Committee, including staff with the City's Transportation Division, Land Development Coordination, and Parks and Recreation Department, objected to the application for COA.

113. There was no record evidence, other than a Staff Report and testimony by ARC staff, in opposition to ARC 08-143.  The denial by the City was

improperly based upon a Staff Report and testimony of ARC staff that was factually incorrect.

114. The Martins' Petition for Writ of Certiorari must be granted because the ARC's denial of Martin's COA, and the City's affirmance of that denial occurred in violation of Martin's due process rights.

115. Councilman Dingfelder, when referring to "this Council" and "my District", failed to carry out his duty as a Councilmember sitting in an appellate capacity as an impartial decision-maker based on the record evidence.

116. An individual's procedural due process rights are violated when a deprivation of a right has occurred without notice and an opportunity to be heard. *Joshua v. City of Gainesville*, 768 So.2d 432, 438 (Fla. 2000).

117. Courts have uniformly invalidated decisions that have been arguably tainted by bias or conflicts of interest. *See, Zoning: Proof of Bias or Conflict of Interest in Zoning Decisions*, 32 AM. JUR. POF 3d 531 § 4 (August 2004).

118. A participant in a quasi-judicial proceeding is entitled to some measure of due process, including an impartial decision maker. *Florida Water Services Corp. v. Robinson*, 856 So.2d 1035, 1039-1040 (Fla. 5th DCA 2003), citing to *Cherry Communications, Inc. v. Deason*, 652 So.2d 803 (Fla. 1995) (while administrative proceedings need not match the judicial model, an impartial decision maker is a basic component of minimum due process), and *Charlotte*

*County v. IMC-Phosphates Co.*, 824 So.2d 298 (Fla. 1st DCA 2002) (an impartial decision maker is a basic component of minimum due process in an administrative proceeding).

119. Finally, Martins' Petition for Writ of Certiorari must be granted because the City's denial of Martins' application for COA occurred only after the City failed to observe the essential requirements of the law. In rendering its denial, the City entirely disregarded all of the factual evidence presented in support of the application for COA and disregarded established precedent when similar matters were previously appealed to City Council. *Colonial Apartments, L.P. v. City of Deland*, 577 So.2d 593 (Fla. 5th DCA 1991) (where lower tribunal misapplies the law, petition for writ of certiorari must be granted); *Orange County v. Quadrangle Development Co.*, 780 So.2d 994 (Fla. 5th DCA 2001) (same).

120. The denial by the City was improperly based upon the misapplication of the Consideration Points in Section 27-216, City of Tampa Zoning Code, wherein the ARC and City Council improperly assumed such section was more restrictive than other applicable sections of the City of Tampa Zoning Code.

121. The denial by the City was improperly based upon an assumption by ARC staff, the ARC and City Council that the HPDG mandated the denial of any application for COA seeking approval of a front yard fence.

122. The denial by the City was improperly based upon a distinction made by Councilman Dingfelder which distinction was not adopted into either the <u>City of Tampa Zoning Code</u>, the Consideration Points, or the HPDG.

123. The denial by the City was based upon an improper standard of review.

124. As a result of the above and because there exists no other adequate remedy, the Martins are entitled to a Writ of Certiorari from this Court reversing the City's denial of Martins' application for COA.

WHEREFORE, Petitioners respectfully request that this Honorable Court grant the following relief:

    A.    Issuance of a Writ of Certiorari reversing the City's denial of Martins' application for COA; and

    B.    Such further and additional relief as this Court deems just and proper.

### COUNT IV
### Declaratory Judgment Action
### (Based on the City's Legally Erroneous Application of the Zoning Code, Consideration Points and HPDG)

125. Petitioners reallege and incorporate by reference the allegations of Paragraphs 1 through 73, above, as well as the documents in the Appendix referenced in those allegations, as if fully stated herein.

126. This is an action brought by the Martins against the City seeking declaratory judgment pursuant to Florida Statute § 86.011, et seq.

127. Section 27-133, City of Tampa Zoning Code, permits front yard fences within single-family residential zoning districts provided the height does not exceed three (3) feet for fences built of opaque materials, or four (4) feet for fences built of transparent materials which do not obstruct light, air and visibility. Unlike the authority granted to the ARC to further restrict fence materials through the HPDG, the ARC is without authority to regulate the location of fences otherwise permitted in the City of Tampa Zoning Code.

128. Section 27-216, City of Tampa Zoning Code, requires new construction to comply with Section 27-216 even if this section requires development or construction that is more restrictive than applicable requirements of the City of Tampa Zoning Code.

129. Section 27-216, City of Tampa Zoning Code, does not prohibit the installation of front yard fences throughout the District nor is this section, as applied to the Petitioners' application for COA more restrictive than applicable requirements of the City of Tampa Zoning Code.

130. The HPDG, as adopted in Chapter 17.5, are ambiguous, inconsistent and vague as applied to the Petitioners' application for COA.

131.   It is the legal position of Petitioners that City's application of the City of Tampa Zoning Code, Consideration Points and HPDG so as to deny Petitioners' application for COA constituted an illegal application of the City of Tampa Zoning Code so as to frustrate and render inoperative the legislative enactment of City of Tampa Zoning Code, Section 27-133 relating to the placement of fences within front yards of single-family residential zoning districts, as same apply to the Subject Property.

132.   It is the legal position of Petitioners that the Consideration Points and HPDG cannot be applied so as to change, alter, be inconsistent with, or interfere with the fence regulations articulated within City of Tampa Zoning Code, Section 27-133 concerning single-family residential zoning districts, as same apply to the Subject Property.

133.   It is the legal position of the City that the application of the Consideration Points and HPDG to deny Petitioners' application for COA was proper in all respects, and that the Consideration Points and HPDG can be applied so as to alter the fence regulations articulated within the City of Tampa Zoning Code, Section 27-133, as same apply to the Subject Property.

134.   As a result of the above dispute, Petitioners are in doubt and are uncertain as to their right to construct the custom wrought-iron fence in accordance with the application, Site Plan and Elevations and the fence regulations articulated

within City of Tampa Zoning Code, Section 27-133.  Petitioners are entitled to have such doubt and uncertainty removed.

135.  Pursuant to Florida Statutes, Section 86.061, upon a declaration by this Court confirming that Petitioners' legal position referenced above is the correct legal position, Petitioners will be without an adequate remedy at law and are therefore entitled to supplemental relief in the form of an injunction requiring that City, in applying the Consideration Points and HPDG to Petitioners' application for COA, avoid an application of the Consideration Points and HPDG that is in any way inconsistent with any of the regulations within the City of Tampa Zoning Code that specifically apply to front yard fences within single-family residential zoning districts, including those regulations articulated in City of Tampa Zoning Code, Section 27-133.

WHEREFORE, Petitioners respectfully request that this Court grant Petitioners the following relief:

    A.   Issuance of a declaratory judgment as follows:

        1.   Declaring that Petitioners' legal position stated above is the correct legal position.

        2.   Declaring that City's application of the Consideration Points and HPDG so as to deny Petitioners' application for COA constitutes an illegal application of the

Consideration Points and HPDG so as to frustrate and render inoperative the legislative enactment of <u>City of Tampa Zoning Code</u>, Section 27-133 relating to front yard fences within single-family residential zoning districts;

B.    Issuance of an injunction in favor of Petitioners and against City requiring that City, in applying the Consideration Points and HPDG to Petitioners' application for COA, avoid an application of the Consideration Points and HPDG that is in any way inconsistent with any of the regulations within the <u>City of Tampa Zoning Code</u> that specifically apply to front yard fences within single-family residential zoning districts, including those regulations articulated in <u>City of Tampa Zoning Code</u> Section 27-133; and,

C.    Such further and additional relief as this Court deems just and proper.

## COUNT V
### Declaratory Judgment Action
### (Based on the City's Violation of the Martins'
### Constitutional Guarantee of Equal Protection)

136.  Petitioners reallege and incorporate by reference the allegations of Paragraphs 1 through 73, above, as well as the documents in the Appendix referenced in those allegations, as if fully stated herein.

137.  This is an action brought by the Martins against the City seeking declaratory judgment pursuant to Florida Statute § 86.011, *et seq.*

138.  At all times relevant to the claims set forth herein, the Martins maintained an interest protected by Article I, Section 2 of the Florida Constitution, and the Fourteenth Amendment to the United States Constitution.

139.  The Martins' application for COA met all the requirements of the <u>City of Tampa Zoning Code</u>, the Consideration Points, and the HPDG, and was supported by overwhelming record evidence.  However, the ARC denied Martins' application, and the City refused to overturn that denial.

140.  With respect to other applicants similarly situated, the City has approved their applications when said applications were supported by similar, or less evidence than was Martins' application.

141.  It is the legal position of Petitioners that the City's denial constituted a discriminatory exercise of power on an *ad hoc* basis – thereby treating Petitioners

differently than other similarly situated applicants without any reasonable basis for such disparate treatment.

142. It is the legal position of Petitioners that the City acted with discriminatory intent in violation of Petitioners' constitutional guarantee of equal protection under the law as articulated in Article I, Section 2 of the Florida Constitution, and the Fourteenth Amendment to the United States Constitution.

143. It is the legal position of the City that Petitioners were not treated differently than other similarly situated applicants with respect to the Subject Property, and that the City's denial of the application for COA did not violate Petitioners' constitutional guarantee of equal protection.

144. As a result of the above dispute, the Martins are in doubt and uncertain as to their right regarding the future development of the Subject Property. The Martins are entitled to have such doubt and uncertainty removed.

WHEREFORE, Petitioners respectfully request this Honorable Court grant the following relief:

A. Issuance of a declaratory judgment declaring that Martins' legal position stated above is the correct legal position;

B. Declaring that the City's denial of the application for COA constitutes a violation of Martins' constitutional guarantee of equal protection under the law as articulated in Article I,

Section 2 of the Florida Constitution and the Fourteenth Amendment to the United States Constitution; and

C.    Such further and additional relief as this Court deems just and proper.

**COUNT VI**

**Complaint for Damages Pursuant to 42 U.S.C. § 1983 *et seq.***

145.  Petitioners reallege and incorporate by reference the allegations of Paragraphs 1 through 73, above, as well as the documents in the Appendix referenced in those allegations, as if fully stated herein.

146.  This is an action brought by Martins against the City seeking damages pursuant to 42 U.S.C. § 1983, *et seq.*

147.  In denying Martins' application for COA, the City acted under color of State law.

148.  At all times relevant to the claims set forth herein, Martins maintained an interest in the Subject Property protected by the Fifth and Fourteenth Amendments to the United States Constitution.

149.  Martins' application for COA met all the requirements of, was consistent with the City of Tampa Zoning Code, the Consideration Points, and HPDG, and was supported by overwhelming record evidence.  However, the City denied Martins' application for COA.

150. The City's application of Florida law, and interpretation of the <u>City of Tampa Zoning Code</u>, the Consideration Points, and the HPDG, so as to deny Martins' application for COA, deprived the Martins of their rights and privileges secured by the Fifth and Fourteenth Amendments to the United States Constitution.

151. It is the legal position of the Martins that the City's denial of the application for COA, in the face of overwhelming record evidence supporting the application, constituted an arbitrary and capricious exercise of power which deprived the Martins of their substantive due process rights and privileges secured by the Fifth and Fourteenth Amendments to the United States Constitution.

152. With respect to other applicants similarly situated, the City has approved their applications and allowed front yard fences when said applications were supported by similar or far less evidence than was Martins' application.

153. The City's denial of the application for COA constituted a discriminatory exercise of power on an *ad hoc* basis – thereby treating the Martins differently than other similarly situated applicants – without any reasonable basis for such disparate treatment.

154. The City, in reaching its denial, acted with discriminatory intent.

155. The City's denial of the application for COA constituted a discriminatory and unfair exercise of power which deprived the Martins of their

constitutional guarantee of equal protection secured by the Fourteenth Amendment to the United States Constitution.

156. As a result of the City's depravation of the Martins' rights and privileges secured by the Fifth and Fourteenth Amendments to the United States Constitution as stated above, the Martins have suffered damages in excess of $15,000.00, exclusive of interest and costs.

157. As a result of City's deprivation of the Martins' rights and privileges secured by the Fifth and Fourteenth Amendments to the United States Constitution as stated above, the Martins have been required to retain the services of the undersigned counsel for the purpose of prosecuting this action. Pursuant to 42 U.S.C. § 1983 et seq., the City is liable for the attorneys' fees incurred by the Martins in prosecuting this action.

WHEREFORE, Petitioners respectfully request this Honorable Court grant the following relief:

A. An award of compensatory damages, in an amount to be determined at trial, but sufficient to compensate the Martins for their loss occasioned by the City's violation of the rights and privileges secured by the Fifth and Fourteenth Amendments to the Unites States Constitution;

B.    An award of all attorneys' fees, court costs, and expenses

incurred by the Martins in the prosecution of this action; and

C.    Such further and additional relief as this Court deems just and

proper.

SHUMAKER, LOOP & KENDRICK, LLP

By: _____
THOMAS M. WOOD, ESQ.
Florida Bar No. 0010080

By: _____
CATHLEEN E. O'DOWD, ESQ.
Florida Bar No. 794090
101 East Kennedy Boulevard, Suite 2800
Tampa, Florida 33602
Phone:  (813) 229-7600
Fax:  (813) 229-1660
Attorneys for Plaintiffs/Petitioners,
Allan S. Martin and Marie B. Martin

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the Petition for Writ of Certiorari contained

herein is in compliance with Rule 9.100(1), Florida Rules of Appellate Procedure,

and is in the required font of Times New Roman 14.

_____
Attorney